JS-6



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JOSEPH FORTESCUE,                        )    Case No. CV 14-0253 FMO (RZx)
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )    **ORDER REMANDING ACTION**
                                         )
ECOLAB INC., et al.,                     )
                                         )
            Defendants.                  )
_____  )

On December 11, 2013, Joseph Fortescue ("plaintiff") filed a Complaint in the Superior Court of the State of California for the County of Los Angeles against defendants Ecolab Inc. dba Ecolab ("Ecolab" or "defendant") and Does 1-50.  On December 23, 2013, plaintiff filed a First Amended Complaint against those same defendants.  On January 10, 2014, defendant filed a Notice of Removal of that action on diversity jurisdiction grounds pursuant to 28 U.S.C. §§ 1332 and 1441.  (See Notice of Removal ("NOR") at ¶¶ 8-9).

Having reviewed the pleadings, the court hereby remands this action to state court for lack of subject matter jurisdiction.  See 28 U.S.C. §§ 1447(c);[1] Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003) ("Subject matter jurisdiction may not be waived, and, indeed, we have held that the district court must remand if it lacks jurisdiction."); Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002) ("Federal Rule

_____

[1]  28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

of Civil Procedure 12(h)(3) provides that a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal."); Washington v. United Parcel Serv., Inc., 2009 WL 1519894, *1 (C.D. Cal. 2009) (a district court may remand an action where the court finds that it lacks subject matter jurisdiction – either by motion or sua sponte).

A removing defendant bears the burden of establishing that removal is proper.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.") (internal quotation marks and citations omitted).  Moreover, if there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve those doubts in favor of remanding the action to state court.  See id. ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

Here, the court's review of the Notice of Removal and the attached state court First Amended Complaint, (see, generally, NOR & Declaration of Rachel T. Segal in Support of NOR, Exh. 6 ("FAC")), make clear that this court has neither federal question nor diversity jurisdiction over the instant matter.  In other words, plaintiff could not have originally brought this action in federal court, in that plaintiff does not competently allege facts supplying either federal question or diversity jurisdiction, and therefore removal was improper.  See 28 U.S.C. §§ 1441(a);[2] Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.") (footnote omitted).

First, there is no basis for federal question jurisdiction, as the operative state court complaint contains only state law causes of action for: (1) discrimination based on age – disparate

---

[2] 28 U.S.C. § 1441(a) provides that:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

1   treatment, Cal. Gov't Code § 12940(a); (2) disability discrimination, Cal. Gov't Code § 12940(a);

2   (3) retaliation for opposing violations of Gov't Code Part 2.8, Cal. Gov't Code § 12940(h); (4)

3   failure to investigate and take corrective action with respect to discrimination, Cal. Gov't Code §

4   12940(j) & (k); (5) wrongful termination in violation of public policies; (6) breach of implied-in-fact

5   contract not to terminate employment without good cause; (7) failure to engage in timely, good

6   faith, interactive process to determine reasonable accommodation for disabilities, Cal. Gov't Code

7   § 12940(n); (8) failure to make reasonable accommodation for disabilities, Cal. Gov't Code §

8   12940(m); (9) discrimination based upon perceived disability and/or ongoing need for medical

9   treatment, Cal. Gov't Code § 12940(a); (10) retaliation and discrimination for taking medical leave,

10  Cal. Gov't Code § 12945.2; and (11) retaliation for complaining about workplace health or safety

11  violations or exercising workplace health or safety rights, Cal. Labor Code § 6310.  (See,

12  generally, FAC).  Each of these claims is based solely on California common law and statutes.

13  (See, generally, id.).  In short, the FAC discloses no federal statutory or constitutional question.

14  See Caterpillar, 482 U.S. at 392, 107 S.Ct. at 2429 (Removal pursuant to Section 1331 "is

15  governed by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction

16  exists only when a federal question is presented on the face of plaintiff's properly pleaded

17  complaint."); Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 724 (1914) (stating that federal

18  question jurisdiction "must be determined from what necessarily appears in the plaintiff's statement

19  of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance

20  of defenses which it is thought the defendant may interpose").

21       Second, there is no basis for diversity jurisdiction because the amount in controversy does

22  not appear to exceed the diversity jurisdiction threshold of $75,000.  See 28 U.S.C. § 1332.[3]  The

23  amount of damages that plaintiff seeks is unclear from the FAC, since the FAC states that plaintiff

24  seeks "general and special compensatory damages" and "statutory damages," rather than a

25  specific number.  (See FAC at 16, Prayer for Relief).  Defendant bears the burden of proving by

26  _____

27       [3]  In relevant part, 28 U.S.C. § 1332(a) provides that "district courts shall have original
    jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of
28  $75,000, exclusive of interest and costs."

a preponderance of the evidence that the amount in controversy meets that jurisdictional threshold.  See Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); see also Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam) ("Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold.  Where doubt regarding the right to removal exists, a case should be remanded to state court.") (footnotes and citations omitted).

Here, defendant estimates plaintiff's claim for lost wages at $39,333.33, and states that adding his claim for lost benefits, as well as future lost wages and benefits, would likely bring the amount of damages for lost wages and benefits to over $50,000.  (See NOR at ¶ 17).  Plaintiff's salary prior to his termination was approximately $59,000 per year, and his employment benefits were worth approximately $1,800 per year.  (See Declaration of Mary Kaul-Hottinger in Support of NOR ("Kaul-Hottinger Decl.") at ¶ 3).  Plaintiff's employment was terminated on April 22, 2013.  (See FAC at ¶ 37).  Two-hundred and sixty-three (263) days passed between plaintiff's termination and the date the NOR was filed.  Therefore, the amount in controversy on plaintiff's lost wages claim is approximately $42,512.33 ($59,000 / 365 = $161.64 per day x 263 days since termination).  The amount in controversy for plaintiff's lost benefits is $1,296.99 ($1,800 / 365 = $4.93 per day x 263 days since termination).  Therefore, the total amount in controversy on these claims is $43,809.32.  This is far short of the $75,000 threshold.

While defendant suggests that the court should consider plaintiff's future lost wages in determining the amount in controversy, the court declines to project lost wages forward to some hypothetical trial date.  "[J]urisdiction depends on the state of affairs when the case begins; what happens later is irrelevant."  Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 958 (7th Cir. 1998) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90, 58 S.Ct. 586, 590-91 (1938)); Soto v. Kroger Co., 2013 WL 3071267, *3 (C.D. Cal. 2013) (noting that "the guiding principle is to measure amount in controversy at the time of removal").  In measuring lost wages for purposes of the amount in controversy, other courts have cut off the calculation at the date of removal.  See, e.g., Soto, 2013 WL 3071267, at *3 ("Jurisdiction based on removal

depends on the state of affairs when the case is removed.  Thus, Kroger is not persuasive when it argues that wages up until the present should be included in the amount in controversy.") (internal quotation marks and citations omitted); Haase v. Aerodynamics Inc., 2009 WL 3368519, *4 (E.D. Cal. 2009) ("The amount in controversy must be determined at the time of removal.  At the time of removal, Plaintiff's lost wage claim, a special damage, totaled $21,830.") (internal citation omitted).  Considering lost wages only up to the time of removal is particularly appropriate here because the FAC does not explicitly demand front pay.  (See, generally, FAC at 16, Prayer for Relief); see also Gamino v. HireRight Soultions, Inc., 2011 WL 1211356, *2 (S.D. Cal. 2011) ("Plaintiff points out that the Complaint's prayer does not seek front pay and that Plaintiff's past lost wages . . . do not amount to or exceed $75,000.  At the time of removal, it appears that the lost wages in question were the wages Plaintiff would have earned at Saia from late October 2010 until the date of removal (February 10, 2011).  This amount would certainly be less than $75,000.  Moreover, even if Plaintiff were seeking front pay, Old Dominion's calculations regarding the amount of front pay that would be at issue at the time of trial is entirely speculative, especially given that Plaintiff has already obtained one job in spite of the report.").

Plaintiff's FAC includes a claim for attorney's fees.  (See FAC at 16, Prayer for Relief). "Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1000 (9th Cir. 2007), overruled on other grounds as recognized by Rodriguez v. AT&T Mobility Serv. LLC, 728 F.3d 975, 976-77 (9th Cir. 2013). Defendant argues that "if Plaintiff were to prevail, he may well collect his reasonable attorneys' fees" and that "[t]hrough trial, it is very likely that those fees could be in excess of $50,000."  (NOR at ¶ 18).

However, "courts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case." Hernandez v. Towne Park, Ltd., 2012 WL 2373372, *19 (C.D. Cal. 2012) (collecting cases); see Reames v. AB Car Rental Servs., Inc., 899 F.Supp.2d 1012, 1018 (D. Ore. 2012) ("The Ninth Circuit has not yet

expressed any opinion as to whether expected or projected future attorney fees may properly be considered 'in controversy' at the time of removal for purposes of the diversity-jurisdiction statute, and the decisions of the district courts are split on the issue."). The court is persuaded that "the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal." Dukes v. Twin City Fire Ins. Co., 2010 WL 94109, *2 (D. Ariz. 2010) (citing Abrego v. Dow Chem. Co., 443 F.3d 676, 690 (9th Cir. 2006)). Indeed, "[f]uture attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal." Id.; Palomino v. Safeway Ins. Co., 2011 WL 3439130, *2 (D. Ariz. 2011) ("This court agrees with the Seventh Circuit and concludes that the better view is that attorneys' fees incurred after the date of removal are not properly included in calculating the jurisdictional amount."). Here, defendant provides no evidence of the amount of attorney's fees that were incurred at the time of removal. (See, generally, NOR). Therefore, defendant has not shown by a preponderance of the evidence that the inclusion of attorney's fees would cause the amount in controversy to reach the $75,000 threshold. See Walton v. AT&T Mobility, 2011 WL 2784290, *2 (C.D. Cal. 2011) (Declining to reach the issue of whether future attorney's fees could be considered in the amount in controversy because the defendant "did not provide any factual basis for determining how much attorney's fees have been incurred thus far and will be incurred in the future[, and] [b]ald assertions are simply not enough.").

While the FAC does not state that plaintiff is seeking punitive damages, (see, generally, FAC at 16, Prayer for Relief), punitive damages may be included in the amount in controversy "if they are recoverable under the applicable law." Burk v. Med. Sav. Ins. Co., 348 F.Supp.2d 1063, 1069 (D. Ariz. 2004); see Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001), cert. denied, 534 U.S. 1104 (2002) ("It is well established that punitive damages are part of the amount in controversy in a civil action."). Defendant cites several cases with large punitive damages awards and appears to argue that because these cases "demonstrate the potential for large punitive damages awards in employment discrimination cases" (NOR at ¶ 19), the amount in controversy will exceed $75,000. "However, the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." Burk, 348

1    F.Supp.2d at 1069; see Geller v. Hai Ngoc Duong, 2010 WL 5089018, *2 (S.D. Cal. 2010) (same);

2    J. Marymount, Inc. v. Bayer Healthcare, LLC, 2009 WL 4510126, *4 (N.D. Cal. 2009) (same).

3    Rather, a defendant "must present evidence that punitive damages will more likely than not

4    exceed the amount needed to increase the amount in controversy to $75,000.  Removing

5    defendants have established probable punitive damages, for example, by introducing evidence

6    of jury verdicts in analogous cases."  Burk, 348 F.Supp.2d at 1069.

7        Here, defendant provides citations to approximately ten cases, but makes no effort to

8    analogize their facts to the facts in the instant case, even noting that "the above cases are not

9    exactly similar to the underlying case here[.]"  (NOR at ¶ 19).  Therefore, inclusion of punitive

10   damages in the amount in controversy would be improper.  See Killion v. AutoZone Stores Inc.,

11   2011 WL 590292, *2 (C.D. Cal. 2011) ("Defendants cite two cases . . . in which punitive damages

12   were awarded, but make no attempt to analogize or explain how these cases are similar to the

13   instant action.  Simply citing these cases merely illustrate[s] that punitive damages are possible,

14   but in no way shows that it is likely or probable in this case.  Therefore, Defendants' inclusion of

15   punitive damages in the calculation of the jurisdictional amount is speculative and unsupported.").

16       Given that any doubt regarding the existence of subject matter jurisdiction must be resolved

17   in favor of remanding the action to state court, see Gaus, 980 F.2d at 566, the court is not

18   persuaded, under the circumstances here, that defendant has met its burden of proving by a

19   preponderance of the evidence that the amount in controversy meets that jurisdictional threshold.

20   See Valdez, 372 F.3d at 1117 ("Since it [was] not facially evident from the complaint that more

21   than $75,000 [was] in controversy, [defendant] should have prove[n], by a preponderance of the

22   evidence, that the amount in controversy [met] the jurisdictional threshold.") (internal quotation

23   marks and citations omitted); see also Matheson, 319 F.3d at 1090-91 ("Conclusory allegations

24   as to the amount in controversy are insufficient.").  At most, defendant has shown that $43,809.32

25   is in controversy.  Therefore, there is no basis for diversity jurisdiction.  See 28 U.S.C. § 1332(a).

26       **This order is not intended for publication. Nor is it intended to be included in or**

27   **submitted to any online service such as Westlaw or Lexis.**

28

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1.  The above-captioned action shall be **remanded** to the Superior Court of the State of California for the County of Los Angeles, Pomona Courthouse South, 400 Civic Center Plaza, Pomona, California 91766, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

2.  The Clerk shall send a certified copy of this Order to the state court.

Dated this 28th day of January, 2014.


                                            /s/
                                    Fernando M. Olguin
                                United States District Judge